IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CAROL C. BLAIR and DONNIE BLAIR, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| COUNTY OF DAVIDSON; ROBERT | ) | 1:05CV00011 |
| HYATT; DALLAS HEDRICK; TIM SELLS; | ) | |
| EDWIN CURRY; GINI CHAUNCEY; | ) | |
| MIKE SHELL; JOHN DOE; KIMBERLY | ) | |
| COGAR; CITY OF LEXINGTON; | ) | |
| JOHN L. GRAY; JIMMY BARBER; | ) | |
| JOHN LOLLIS; TAD KEPLEY; MICHAEL | ) | |
| NOYES; R. TODD KEPLEY; and | ) | |
| TASER INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

BEATY, District Judge.

This case arises out of claims by Plaintiff Carol C. Blair ("Plaintiff") related to injuries she received after she was arrested by City of Lexington Police Officers and held by Davidson County Sheriff's deputies at the Davidson County Detention Center on January 10-11, 2004. This matter is presently before the Court on a Motion to Dismiss [Document #5] by Defendants City of Lexington; City Manager John Gray; Chief of Police Jimmy Barber; Police Captain John Lollis; Police Lieutenant Tad Kepley; Police Sergeant Michael Noyes; and Police Officer Todd Kepley (collectively, the "City Defendants"); a Motion to Dismiss [Document #12] by Defendants Davidson County, Davidson County Manager Robert Hyatt, Davidson County Sheriff Dallas Hedrick, Captain of Detention at the Davidson County Detention Center Tim

Sells, Lieutenant of Detention at the Davidson County Detention Center Edwin Curry,

Detention Officer Gini Chauncey, Detention Officer Mike Shell, Detention Officer John Doe,

and Detention Officer Kimberly Cogar (collectively, the "Sheriff's Office Defendants"); and a

Motion to Dismiss [Document #10] by Taser International, Inc. For the reasons discussed below,

the Motion to Dismiss by the City Defendants [Document #5] will be granted, the Motion to

Dismiss by Defendant Taser International [Document #10] will also be granted, and the Motion

to Dismiss by the Sheriff's Office Defendants [Document #12] will be granted in part and denied

in part.

## I.     FACTUAL BACKGROUND[1]

Plaintiff alleges that on the evening of January 10, 2004, she was in the custody of City

of Lexington Police Officers and was transported to the Davidson County Detention Center by

Police Officer Todd Kepley. After arriving at the Detention Center, Plaintiff contends that

Police Officer Todd Kepley surrendered custody of her to the Davidson County Sheriff and his

Detention Officers, and that Detention Officer Gini Chauncey secured her in a locked cell in a

secured area of the Detention Center. However, Plaintiff contends that after she was fully

---

[1] As is appropriate on a Motion to Dismiss, the Court only considers the facts as presented in Plaintiff's Complaint. Generally, a "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002) (internal quotations omitted). In making this determination, a court must view the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded allegations. Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994). However, the Court notes that Defendants sharply dispute many of the factual contentions contained in the Complaint.

restrained in the locked cell, four Detention Officers subsequently entered the cell without justification and each repeatedly shocked and burned her with multiple taser devices, with each device discharging approximately 50,000 volts of electrical energy per strike. Plaintiff alleges that as a result, she was seriously burned, including burns, tears, punctures, and cauterization of her flesh, and was in obvious need of emergency medical attention. However, Plaintiff contends that the Detention Officers failed to provide or obtain medical care and were deliberately indifferent to her medical needs.

Plaintiff further contends that, without justification, she was later forced to undergo a strip search, including being forced to assume "bizarre poses and positions of a lewd, lascivious, disgusting, and grotesque nature" and "reveal her genitals" while multiple Detention Officers made salacious comments. Plaintiff further contends that Detention Officers also kicked, assaulted, and battered her, including by kicking and striking her behind her knees. Plaintiff contends that all of these incidents occurred when she was in the custody of the Davidson County Sheriff and his Detention Officers, on an arrest without a warrant, and before any probable cause determination was made. Plaintiff contends that the Detention Officers failed to bring her before a magistrate judge for a probable cause determination and refused to allow her to have any communication with her husband, with an attorney, or with anyone outside the Detention Center while she was being held.

Finally, Plaintiff also contends that at some point during her detention, her fingers were bent back by Detention Officer Chauncey while she was being fingerprinted at the Detention

Center, and that this rough fingerprinting occurred in the presence of Lexington Police Officer Todd Kepley. However, Plaintiff does not allege that Officer Kepley was involved in the fingerprinting, or that Officer Kepley was involved in or witnessed any of the other alleged incidents.

Based on these alleged incidents, Plaintiff and her husband, Donnie Blair,[2] bring claims pursuant to 42 U.S.C. § 1983, § 1985, § 1986 and state law. Plaintiff asserts claims against the following Sheriff's Office Defendants: the County of Davidson; Davidson County Manager Robert Hyatt; Davidson County Sheriff Dallas Hedrick; Captain of Detention at the Davidson County Detention Center Tim Sells (appointed by Sheriff Hedrick); Lieutenant of Detention at the Davidson County Detention Center Edwin Curry (appointed by Sheriff Hedrick and Captain Sells); Detention Officer Gini Chauncey (appointed by Sheriff Hedrick, Captain Sells and Lieutenant Curry); Detention Officer Mike Shell (appointed by Sheriff Hedrick, Captain Sells and Lieutenant Curry); Detention Officer John Doe (appointed by Sheriff Hedrick, Captain Sells and Lieutenant Curry); and Detention Officer Kimberly Cogar (appointed by Sheriff Hedrick, Captain Sells and Lieutenant Curry). Plaintiff also asserts claims against the following City Defendants: City of Lexington; City Manager John Gray; Chief of Police Jimmy Barber; Police Captain John Lollis; Police Lieutenant Tad Kepley; Police Sargeant Michael Noyes; and Police Officer Todd Kepley. All of the individuals are sued in their official and individual

_____

[2] Plaintiff's husband, Donnie Blair, has joined in this suit only to the extent that he alleges a loss of consortium claim. Therefore, for ease of reference, the Court will refer to Plaintiff Carol Blair as "Plaintiff" throughout.

capacities. Finally, Plaintiff also brings claims against Taser International, Inc. The City Defendants, Sheriff's Office Defendants, and Defendant Taser International have each separately filed a Motion to Dismiss. Therefore, the Court will consider each group of Defendants separately below.

## II. MOTION TO DISMISS BY TASER INTERNATIONAL

With respect to Defendant Taser International, Plaintiff brings claims against Taser International for breach of warranty and unfair and deceptive trade practices. In support of these claims, Plaintiff contends that Taser International represented to Sheriff Hedrick that the taser devices were safe and would not result in injuries to humans upon whom the devices were to be used. Plaintiff contends that this representation was false and that Taser International knew it was false when it was made. Plaintiff contends that these actions by Taser International constituted a breach of express warranty, breach of the implied warranty of fitness for a particular purpose, and an unfair and deceptive trade practice.

Taser International filed a Motion to Dismiss [Document #10] contending that Plaintiff's Amended Complaint fails to state a claim against it upon which relief may be granted.[3] Specifically, Taser contends that Plaintiff lacks privity with Taser as to her breach of warranty

---

[3] Taser International filed a previous Motion to Dismiss [Document #3] as to Plaintiff's original Complaint. However Taser International subsequently filed a Notice [Document #9] withdrawing that previous Motion to Dismiss and filing the present Motion to Dismiss [Document #10] as to the Amended Complaint. Therefore, the first Motion to Dismiss [Document #3] is deemed withdrawn, and the only pending motion by Taser International is the present Motion to Dismiss [Document #10] addressed above.

claim, because any purported breach of warranty was between Taser and the Sheriff's Office, and Plaintiff is not within the class of persons to whom a warranty claim is extended under state law. Taser further contends that Plaintiff fails to state a claim for unfair and deceptive trade practice, because any purported deception was between Taser and the Sheriff's Office, and involved no detrimental reliance by Plaintiff.

Plaintiff has not filed a Response to Taser International's Motion to Dismiss. Plaintiff filed a single Response Brief [Document #14] addressing the Motions to Dismiss filed by the other Defendants, but did not include in the Response any argument or response to Taser International's Motion to Dismiss. Therefore, under Local Rule 7.3(k), the Court will treat Taser International's Motion to Dismiss as unopposed.

Having reviewed the Motion to Dismiss, the Court concludes that Plaintiff has failed to state a claim upon which relief may be granted against Defendant Taser International. Specifically, as to Plaintiff's breach of warranty claims, the Court notes that under North Carolina law, "[e]xcept where the barrier of privity has been legislatively or judicially removed, the absence of a contractual relationship between the seller or manufacturer of an allegedly defective product and the person injured by it continues to preclude products liability actions for breach of express and implied warranties." Crews v. W.A. Brown & Son, Inc., 106 N.C. App. 324, 331, 416 S.E.2d 924, 929 (1992). North Carolina law extends express warranty claims to the ultimate purchaser of a product and "to any natural person who was in the family or household of his buyer or who was a guest in his home." N.C. Gen. Stat. § 25-3-18; see also N.C. Gen. Stat.

-6-

§ 99B-2(b) (extending implied warranty claims to the buyer and the family members, guests and employees of the buyer). In the present case, Plaintiff has failed to allege the requisite contractual relationship with Taser International and has failed to allege facts that would bring her within the statutory provisions. Plaintiff was not the purchaser of the tasers, and she specifically contends only that the alleged breach of warranty was from Taser International to the Sheriff's Office. Based on these facts as alleged in the Amended Complaint, the Court concludes that Plaintiff has failed to state a breach of warranty claim under state law.

In addition, with respect to the claim for unfair and deceptive trade practices against Taser International, Plaintiff alleges that Taser International knowingly and willfully deceived the Sheriff into believing that the taser devices were suitable for use on human beings. Plaintiff, however, does not allege that she herself dealt with or was deceived by Taser International. Under North Carolina law, a claim for unfair and deceptive trade practices requires that Plaintiff have detrimentally relied on a statement or misrepresentation by the defendant and that she suffered actual injury as a result of the deceptive statement or misrepresentation. See Forbes v. Par Ten Group, Inc., 99 N.C. App. 587, 600-01, 394 S.E.2d 643, 650-51 (1990); Pleasant Valley Promenade v. Lechmere, Inc., 120 N.C. App. 650, 664, 464 S.E.2d 47, 58 (1995). Plaintiff has failed to meet these requirements. Therefore, Taser International's Motion to Dismiss

[Document #10] will be granted, and Plaintiff's claims against Taser International will be dismissed with prejudice.[4]

## III. MOTION TO DISMISS BY CITY DEFENDANTS

A Motion to Dismiss [Document #5] was also filed by the City Defendants, that is: the City of Lexington; City Manager John Gray; Chief of Police Jimmy Barber; Police Captain John Lollis; Police Lieutenant Tad Kepley; Police Sargeant Michael Noyes; and Police Officer Todd Kepley. The claims against Officer Todd Kepley are based on his presence and failure to act at the time of at least one of the alleged incidents (the alleged fingerprinting incident). The claims against Sargeant Noyes, Lieutenant Tad Kepley, Captain Lollis, Chief of Police Barber, City Manager Gray and the City of Lexington are based on alleged failure to properly supervise or train Officer Todd Kepley. In addition, Plaintiff brings claims against all of the City Defendants for violation of Plaintiff's civil rights as secured by the Constitution and laws of the United States, based on the same allegations previously noted.

In their Motion to Dismiss, the City Defendants contend that the Amended Complaint alleges, at most, that Officer Todd Kepley may have been present when Plaintiff was allegedly fingerprinted in a rough manner by Sheriff's Department Detention Officers after she was at the Davidson County Detention Center in the custody of the Detention Officers. The City

---

[4] Taser International also contends that Plaintiff's claims against it do not share a common nucleus of common facts with Plaintiff's constitutional claims. However, this Court concludes that even to the extent that Plaintiff's claims could be construed as involving a common nucleus of operative facts, Plaintiff has failed to state any valid claim against Taser International under state law, and therefore the claims against Taser International will be dismissed with prejudice.

Defendants further note that Plaintiff's claims against all of the other City Defendants are based on alleged failure to train or supervise Officer Todd Kepley due to his alleged failure to intervene during the fingerprinting. The City Defendants contend that the alleged fingerprinting incident resulted in *de minimis* injury, and that the fingerprinting incident was the only alleged incident to which any City police officer was connected in any way. The City Defendants further contend that Plaintiff has failed to allege sufficient facts to support a claim of bystander liability against Officer Todd Kepley because Plaintiff does not allege that Officer Kepley had the power or opportunity to prevent the alleged illegal acts. The City Defendants also contend the Plaintiff has failed to allege any basis for her state claims against Officer Kepley because Plaintiff specifically contends that she was not in Officer Kepley's custody at the time of any of the alleged incidents. In addition, the City Defendants contend that Plaintiff has failed to plead any City policy or custom that was the moving force behind the alleged constitutional violations. The City Defendants further contend that Plaintiff has not alleged that any of the City Defendants failed to respond to any prior misconduct or engaged in deliberate indifference or tacit authorization of any alleged misconduct.

In response, Plaintiff contends that the Amended Complaint alleges that Officer Kepley was present during at least one of the incidents, that even minor injuries should be sufficient to support a claim for constitutional violations, that the fingerprinting incident was not *de minimis*, and that all of the alleged incidents and injuries should be considered together (even those allegedly inflicted by Sheriff's deputies, not City police officers) and should not be considered

*de minimis* when considered as a whole. Plaintiff do not cite any case law in support of these contentions.

The Supreme Court has held that in "evaluating the constitutionality of conditions or restrictions of pretrial detention," the "proper inquiry" is "whether those conditions amount to punishment of the detainee" under the Due Process clause. Bell v. Wolfish, 441 U.S. 520, 535, 99 S. Ct. 1861, 1872, 60 L. Ed. 2d 447 (1979). The Fourth Circuit has concluded that excessive force claims of arrestees and pretrial detainees in custody are governed by the Due Process Clause of the Fourteenth Amendment. See Riley v. Dorton, 115 F.3d 1159, 1164, 1166 (4th Cir. 1997); Taylor v. McDuffie, 155 F.3d 479, 483-84 (4th Cir. 1998). A Fourteenth Amendment claim exists where the defendant "inflicted unnecessary and wanton pain and suffering" on an arrestee or pretrial detainee, and where the force was applied "maliciously and sadistically for the very purpose of causing harm." Taylor, 155 F.3d at 483. However, such a claim does not exist absent extraordinary circumstances if the injury is *de minimis.* See id. "Extraordinary circumstances" are only present when the force used is "of a sort repugnant to the conscience of mankind . . . or the pain itself [is] such that it can properly be said to constitute more than *de minimis* injury." Id. at 483 (internal quotations omitted); see also Riley v. Dorton, 115 F.3d at 1166-68.

In applying this standard in the present case, the Court notes first that as to Officer Kepley and the other City Defendants, the Court will only consider the alleged fingerprinting incident, as that is the only incident which Plaintiff alleges any connection, involvement, or presence of any City police officer. The Court will not attribute additional injuries or alleged

-10-

constitutional violations to the City Defendants, where those alleged injuries and violations allegedly occurred in the custody of the Sheriff's officers, without any alleged involvement or presence of any of the City officers. With respect to the fingerprinting incident, which was allegedly witnessed by Officer Kepley, the Court has reviewed the allegations contained in the Complaint, and the Court finds that Plaintiff's allegation that her finger was "ben[t] . . . beyond a normal and regular angular degree" (Am. Compl. at Para. 37), with no allegation of any resulting injury, is a *de minimis* injury and is not an act "of a sort repugnant to the conscience of mankind." Cf. Taylor, 155 F.3d at 483; Riley v. Dorton, 115 F.3d at 1166-68. Plaintiff does not allege any lasting damage or injury to her finger, and contends only that it was bent back during fingerprinting. This incident, which is the only incident at which Officer Kepley was alleged to be present, is indeed *de minimis* in nature.

In addition, the Court agrees that Plaintiff has failed to allege facts to establish any basis for bystander liability against Officer Kepley, because she has failed to plead any authority or opportunity by Officer Kepley to intervene. See Randall v. Prince George's County, 302 F.3d 188, 202-04 (4th Cir. 2002) (noting that "an officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act"). The Court also concludes that Plaintiff has failed to allege any state law claims against Officer Kepley, because the Amended Complaint does not allege any affirmative misconduct by Officer Kepley and specifically contends that Plaintiff was not in Officer Kepley's custody (or any other City

police officer's custody) at the time of any of the alleged incidents. In fact, Plaintiff specifically alleges that she was in the custody of the Sheriff and his deputies at the time of the alleged incidents.

Therefore, Plaintiff's allegations that Officer Todd Kepley violated her constitutional rights or was negligent because he was allegedly a bystander during the fingerprinting incident fail to state a claim upon which relief can be granted. As to Plaintiff's claims against the remaining City Defendants, the Court notes that all of those claims hang on the allegation that Officer Kepley violated Plaintiff's constitutional rights or was negligent. Because Plaintiff has not stated a claim against Officer Kepley, all of the ancillary claims against the other City Defendants necessarily fail as well. See City of Canton v. Harris, 489 U.S. 378, 387, 109 S. Ct. 1197, 1204, 103 L. Ed. 2d 412 (1989); Randall v. Prince George's County, 302 F.3d at 202-04. Therefore, the Motion to Dismiss by the City Defendants [Document #5] will be granted, and all of the claims against Defendants City of Lexington, John L. Gray, Jimmy Barber, John Lollis, Tad Kepley, Michael Noyes, and R. Todd Kepley will be dismissed.

IV.    MOTION TO DISMISS BY SHERIFF'S OFFICE DEFENDANTS

Finally, a Motion to Dismiss [Document #12] was also filed by the Sheriff's Office Defendants: the County of Davidson; Davidson County Manager Robert Hyatt; Davidson County Sheriff Dallas Hedrick; Captain of Detention at the Davidson County Detention Center Tim Sells; Lieutenant of Detention at the Davidson County Detention Center Edwin Curry; Detention Officer Gini Chauncey; Detention Officer Mike Shell; Detention Officer John Doe;

and Detention Officer Kimberly Cogar. Plaintiff brings state law claims for assault and battery and intentional infliction of emotional distress against Detention Officers Chauncey, Shell, Doe, and Cogar. Plaintiff also brings claims against Lieutenant Curry, Captain Sells, and Sheriff Hedrick based on their failure to adequately supervise, manage, direct, train and control Defendants Chauncey, Shell, Doe and Cogar. In addition, Plaintiff brings claims against County Manager Hyatt and Davidson County for failure to properly supervise, direct and control the operation of the Davidson County Detention Center. As to all of the Sheriff's Office Defendants, Plaintiff brings claims for violation of civil rights secured by Constitution and laws of the United States, including assault and battery, intentional infliction of emotional distress, denial of assistance of and access to counsel, denial of right to probable cause determination by magistrate judge, excessive force, denial of necessary medical care and attention, and destruction of personal property. The Amended Complaint also includes a claim for punitive damages.

The Sheriff's Office Defendants have not moved to dismiss the assault and battery claims against Detention Officers Chauncey, Shell, Doe, and Cogar. However, the Sheriff's Office Defendants have moved to dismiss all of Plaintiff's claims for intentional infliction of emotional distress, the claims against Lieutenant Curry, Captain Sells, and Sheriff Hedrick, the claims against Davidson County and County Manager Hyatt, the claims for civil rights violations against all of the Sheriff's Office Defendants, and the demand for punitive damages. Because the claims involve different issues, the Court will first consider the Motion to Dismiss with respect

to Defendants Davidson County and County Manager Hyatt, and will then consider the Motion to Dismiss with respect to the remaining Sheriff's Office Defendants.

A.    Motion to Dismiss as to Defendants Davidson County and County Manager Hyatt

With respect to the claims against Davidson County and County Manager Hyatt, Plaintiff does not allege any direct action by Davidson County or County Manager Hyatt. Instead, Plaintiff's claims are based on Plaintiff's allegations that Davidson County and County Manager Hyatt are responsible for the alleged actions of the Sheriff's Detention Officers at the Detention Facility. In their Motion to Dismiss, Defendants contend that those claims should be dismissed because under state law, the Sheriff's Office and the County are separate entities, and Plaintiff has not alleged any facts supporting a claim against Davidson County or County Manager Hyatt. Plaintiff does not respond to these contentions in her Response Brief as to Davidson County or County Manager Hyatt.

After reviewing the parties' arguments and the allegations of the Complaint, the Court concludes that Plaintiff has failed to allege any claims against Davidson County or County Manager Hyatt. Plaintiff does not allege that she was ever in the custody of any county employees, or that any county personnel were involved in any of the alleged incidents. Instead, as noted above, Plaintiff specifically contends that she was in the custody of the Sheriff and his Detention Officers, and that all of the alleged incidents were perpetrated by Detention Officers appointed by the Sheriff. "In North Carolina, the Office of Sheriff is a legal entity, established by the state constitution and state statutes, separate and distinct from the Board of County

-14-

Commissioners because a sheriff is elected by the people, not employed by the county." Little v. Smith, 114 F. Supp. 2d 437, 446 (W.D.N.C. 2000) (citing N.C. Gen. Stat. § 162-1); see also Boyd v. Robeson County, 169 N.C. App. 460, 475, 621 S.E.2d 1, 11 (2005) (holding that North Carolina state law "characterize[s] a Sheriff's Department as a local governmental entity"). Under state law, it is the sheriff, not the county, that has final decision making authority over the law enforcement policies and personnel of his office, and the sheriff's deputies "are appointed by and act for the sheriff, who alone is responsible for their conduct." Little v. Smith, 114 F. Supp. 2d at 446 (quoting Styers v. Forsyth County, 212 N.C. 558, 561, 194 S.E. 305, 309 (1937)). In addition, under North Carolina law, the sheriff has exclusive custody and control of the jail in his county. See N.C. Gen. Stat. § 162-22 (2004) ("The sheriff shall have the care and custody of the jail in his county; and shall be, or appoint, the keeper thereof."); see also Knight v. Vernon, 214 F.3d 544, 545 (4th Cir. 2000) ("Sheriffs run the county jails in North Carolina."). In the present case, all of Plaintiff's allegations relate to alleged conduct by the Sheriff or his Detention Officers while Plaintiff was in their custody at the Davidson County Detention Center. Neither the Sheriff nor his Detention Officers report to the County or County Manager Hyatt, and Plaintiff has not alleged any unconstitutional policy or conduct by the County or County Manager Hyatt. Therefore, the Motion to Dismiss as to Davidson County and County Manager Hyatt will be granted, and all of the claims against Davidson County and County Manager Hyatt will be dismissed.

B.      Motion to Dismiss as to Remaining Sheriff's Office Defendants

1.      Alleged Constitutional Violations

With respect to the remaining claims against the Sheriff and the various Detention Officers and their supervisors, the Sheriff's Office Defendants contend that Plaintiff has failed to allege any 14th Amendment violation. Defendants contend that the tasering of Plaintiff was justified under the circumstances. Defendants also contend that the strip search of Plaintiff was justified and reasonable under the circumstances. Defendants further contend that Plaintiff has failed to state a claim for failure to provide medical care in the circumstances, failed to allege the amount of time that passed before a probable cause determination was made, and failed to allege that the Detention Officers' refusal to allow her to contact her husband or an attorney was "punishment." Finally, Defendants also contend that Plaintiff's injuries were *de minimis* and that her claims should be dismissed on that basis as well.

As previously noted, excessive force claims of arrestees and pretrial detainees in custody are governed by the Due Process Clause of the Fourteenth Amendment. See Taylor v. McDuffie, 155 F.3d 479, 483-84 (4th Cir. 1998). A Fourteenth Amendment claim exists where the defendant "inflicted unnecessary and wanton pain and suffering" on an arrestee or pretrial detainee, and where the force was applied "maliciously and sadistically for the very purpose of causing harm." Id. at 483. When a plaintiff brings a 14th Amendment claim for excessive force against a pretrial detainee, the plaintiff must show that the officer's actions "amounted to punishment and were not merely an incident of some other legitimate governmental purpose, and that the injury

-16-

resulting from their actions was more than *de minimis*." Robles v. Prince George's County, 302 F.3d 262, 269 (4th Cir. 2002) (internal quotations omitted).

Specifically with respect to the use of tasers, courts have held that officers may use a taser devise in various contexts to subdue a belligerent or unruly arrestee, inmate or detainee. Cf. Draper v. Reynolds, 369 F.3d 1270, 1277-78 (11th Cir. 2004) (holding that a " single use of the taser gun causing a one-time shocking" against a "hostile, belligerent, and uncooperative" arrestee in order to effectuate the arrest was not excessive force in the totality of the circumstances); Jasper v. Thalacker, 999 F.2d 353, 354 (8th Cir. 1993) (using a stun gun to subdue an unruly inmate did not violate 8th Amendment where plaintiff failed to prove that the officers used the stun gun sadistically or maliciously to cause harm); Caldwell v. Moore, 968 F.2d 595, 599-602 (6th Cir. 1992) (holding that use of a taser was not a per se violation of the 8th Amendment if use of the taser gun is necessary to avoid using greater force and the use is not with the malicious intent to inflict harm); see also Michenfelder v. Sumner, 860 F.2d 328, 336 (9th Cir. 1988) (holding that tasering violates the 14th Amendment if it occurs without justification, or if it is used for the purpose of punishment or infliction of pain, and "[t]he appropriateness of the use must be determined by the facts and circumstances of the case" (internal quotation omitted)).

In addition, with respect to strip searches, courts have likewise held that such searches may be reasonable depending upon the circumstances of the individual case. See, e.g., Logan v. Shealy, 660 F.2d 1007, 1013 (4th Cir. 1981) ("Strip searches of detainees are constitutionally constrained by due process requirements of reasonableness under the circumstances . . . Courts

-17-

must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." (internal quotations omitted)). "'In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails.'" Id. (quoting Bell v. Wolfish, 441 U.S. at 559, 99 S. Ct. at 1884); see also Amaechi v. West, 237 F.3d 356, 364 (4th Cir. 2001) (holding that under clearly established law, "the intrusive, highly degrading nature of a strip search demands a reason for conducting such a search that counterbalances the invasion of personal rights that such a search involves").

In addition, with respect to claims for denial of medical care, a plaintiff must show "deliberate indifference" to a "serious medical need." See Brown v. Harris, 240 F.3d 383, 388 (4th Cir. 2001). To meet this standard, a plaintiff must show that the officers "actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (quoting Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001)).

Finally, with respect to a probable cause determination, the Supreme Court has held that individuals arrested without a warrant must be "promptly" brought before a neutral magistrate judge for a probable cause determination, generally within at least 48 hours. See County of Riverside v. McLaughlin, 500 U.S. 44, 53, 111 S. Ct. 1661, 1668, 114 L. Ed. 2d 49 (1991). However, even a hearing held within 48 hours may not "pass constitutional muster" if the arrestee can establish that the probable cause determination was "delayed unreasonably"

-18-

including "a delay motivated by ill will against the arrested individual, or delay for delay's sake." Id. at 56, 111 S. Ct. at 1670.

In the present case, Plaintiff alleges in the Amended Complaint that she was fully restrained in a locked cell and that multiple officers then entered the cell without justification and each tasered her multiple times. Plaintiff further contends that Detention Officers also kicked, assaulted, and battered her, including by kicking and striking her behind her knees. Plaintiff also contends that, without justification, she was forced to undergo a strip search, including being forced to assume "bizarre poses and positions of a lewd, lascivious, disgusting, and grotesque nature" and "reveal her genitals" while multiple Detention Officers made salacious comments. The Amended Complaint also alleges that Plaintiff was severely burned, causing cauterization of her flesh, and that Detention Officers were aware of and deliberately indifferent to her medical needs when they failed to provide emergency medical care or release her to obtain emergency care for herself. Plaintiff also contends that Detention Officers refused to bring her before a neutral magistrate to obtain a probable cause determination, and refused to allow her any contact with her husband, an attorney, or anyone outside the Detention Center, even after she had suffered severe burns.

Based on these allegations, the Court finds that Plaintiff has alleged more than *de minimis* injury, and could state a claim for violation of the 14th Amendment based on the alleged tasering by multiple officers without justification after she was secured in a locked cell, an alleged strip search conducted without basis and including lewd comments and poses, an alleged kicking and

striking on the back of the knees without basis or justification, the failure to obtain a probable

cause determination, and denial of access to an attorney or anyone outside the Detention Center

following her injuries.[5] Although Defendants contend that these actions were not designed to

punish, were justified, and were in furtherance of legitimate governmental purposes, such a

determination requires factual considerations beyond the allegations in the Complaint. Although

Plaintiff ultimately has the burden to actually establish any constitutional violation when all of

the circumstances surrounding these incidents are considered, taking the allegations in the

Complaint as true, as the Court must at this stage, the Court finds that Plaintiff has at least stated

a claim for violation of her constitutional rights.

    2.  Qualified Immunity Defense

  With respect to the "individual capacity" claims, the Sheriff's Office Defendants also

contend that all of the Detention Officers are entitled to qualified immunity. See Robles, 302

F.3d at 270. As the basis for qualified immunity, Defendants note that tasering does not violate

clearly established law in some circumstances, as cited above. Defendants likewise contend that

the strip search was reasonable in the circumstances given the factors outlined in Logan v. Shealy,

and did not violate clearly established law. However, taking the allegations in the Complaint as

---

[5] With respect to Plaintiff's claim that her finger was bent back during fingerprinting, Defendants contend that these injuries are *de minimis*. As discussed previously, the Court has concluded that the allegation that Plaintiff's finger was bent back while she was being fingerprinted, standing alone, is *de minimis* in nature. However, in determining whether Plaintiff has alleged a claim for constitutional violations against the Sheriff's Office Defendants, the Court has considered the additional allegations against the Sheriff's Office Defendants to determine if Plaintiff has alleged facts sufficient to state a claim.

true, Plaintiff has alleged that she was fully restrained in a locked cell and that multiple officers then entered the cell without justification and each tasered her multiple times, and strip searched her without justification in a lewd manner, in addition to the other incidents alleged in the Complaint. The Court cannot conclude that such conduct would not violate clearly established law. To the extent that Defendants contend that Plaintiff's conduct or other circumstances may have justified these actions, or at least rendered them as not in violation of clearly established law, those determinations require consideration of Defendants' factual contentions, and as such are, again, more appropriately considered after discovery and on a summary judgment determination or trial rather than a motion to dismiss.

### 3. Supervisory Liability

The Sheriff's Office Defendants also seek dismissal of the "individual capacity" claims against the various supervisors in the Detention Officers' chain of command. In this regard, Defendants contend that Plaintiff has failed to allege any basis for supervisory liability against Defendants Hedrick, Sells and Curry. However, supervisory officials may be liable under § 1983 if they actually participate in a constitutional violation or if they act with deliberate indifference in permitting constitutional violations to continue unchecked. See Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). Thus, a supervisor may be liable under § 1983 if he adopts an unconstitutional policy or if he fails to adopt proper policies or training where the failure is deliberately indifferent to the rights of citizens, and where the failure is a causative factor in the constitutional injuries allegedly inflicted. See, e.g., Carter v. Morris, 164 F.3d 215, 220-21 (4th

-21-

Cir. 1999) (noting that "[a]s with municipal liability . . . [a] plaintiff must show actual or constructive knowledge of a risk of constitutional injury, deliberate indifference to that risk, and an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff" (internal quotations omitted)); Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003); see also Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 92 (1st Cir. 1994) ("With respect to claims of lack of proper police training, when implementing and maintaining a training program, in order to be found liable, a supervisor must demonstrate reckless or callous indifference to the rights of citizens.").

In addition, "[t]he principle is firmly entrenched that supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates . . . . [where] supervisory indifference or tacit authorization of subordinates' misconduct [is] a causative factor in the constitutional injuries they inflict on those committed to their care." Shaw, 13 F.3d at 798. To establish supervisory liability under § 1983 based on tacit authorization of subordinates' conduct, the plaintiff must establish "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw, 13 F.3d at 799. Supervisory liability "ultimately is determined 'by pinpointing

the persons in the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked'" and this determination "is ordinarily one of fact, not law." Id. at 798-99 (quoting Slakan v. Porter, 737 F.2d 368, 376 (4th Cir. 1984)).

In this case, Plaintiff alleges that she was in the custody of Defendants Hedrick, Sells and Curry at the time of the alleged incidents, and that they failed to supervise and control the Detention Officers and stop the alleged constitutional violations. Plaintiff also contends that Defendants Hedrick, Sells and Curry were specifically involved in the deprivation of her constitutional rights, knew of the constitutional violations, had the power to prevent them, and failed to act to prevent the constitutional violations. (Compl. at 169-170, 174-176.) Plaintiff also contends that Defendants Hedrick, Sells and Curry failed and refused to properly instruct and train the Detention Officers, particularly with respect to the use of tasers and the use of strip searches. Viewing the allegations in the Complaint in the light most favorable to Plaintiff, the Court concludes that Plaintiff has stated a claim against Defendants Hedrick, Sells and Curry for allegedly participating in the alleged violations, for deliberate indifference in sanctioning or permitting the alleged constitutional violations to continue unchecked, and for failing to adequately train the Detention Officers with deliberate indifference to the rights of citizens. Plaintiff nevertheless will ultimately be required to present evidence in support of her allegations in this regard. However, at this stage in the litigation, Plaintiff's supervisory liability claims will not be dismissed.

-23-

4.      Official Capacity Claims

With respect to the "official capacity" claims, the Sheriff's Office Defendants contend that Plaintiff has failed to allege a municipal policy or custom sufficient to state a claim against the Sheriff in his official capacity.  These official capacity claims are all, in essence, claims against the Sheriff's Office.  See Kentucky v. Graham, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n. 55, 98 S. Ct. 2018, 2035 n. 55, 56 L. Ed. 2d 611 (1978))); Gantt v. Whitaker, 203 F. Supp. 2d 503, 508 (M.D.N.C. 2002) (noting that a claim against the Sheriff in his official capacity is, in essence, a suit against the Sheriff's Office), aff'd, 57 Fed. Appx. 141 (4th Cir. 2003). "[I]t is by now well settled that a municipality is only liable under section 1983 if it causes [a constitutional] deprivation through an official policy or custom.  Municipal policy may be found in written ordinances and regulations, in certain affirmative decisions of individual policymaking officials, or in certain omissions on the part of policymaking officials that manifest deliberate indifference to the rights of citizens.  Outside of such formal decisionmaking channels, a municipal custom may arise if a practice is so 'persistent and widespread' and 'so permanent and well settled as to constitute a custom or usage with the force of law.'" Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999) (citations omitted).  Where official liability is based on failure to train, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police

-24-

come into contact." <u>City of Canton</u>, 489 U.S. at 388, 109 S. Ct. at 1204. Thus, a municipal entity may be liable for failing to adequately train its officers where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." <u>City of Canton</u>, 489 U.S. at 390, 109 S. Ct. at 1205.

In the present case, Plaintiff brings claims against Sheriff Hedrick in his official capacity based on, inter alia, his failure to adequately supervise and train his Detention Officers and failure to prevent known constitutional violations. As noted above, North Carolina law establishes that the Sheriff is the sole law-enforcement policymaker for the county, and no other individuals have policy-making or training authority over the Sheriff or his deputies. <u>See, e.g.</u>, <u>Olvera v. Edmundson</u>, 151 F. Supp. 2d 700, 705 (W.D.N.C. 2001) (noting that "[i]n North Carolina, the sheriff, not the county, has final policymaking authority" over personnel and training decisions (internal quotations omitted)). Thus, Sheriff Hedrick, as the Sheriff, is the responsible policymaker who could be held liable for adopting unconstitutional policies or for failing to adopt proper policies or training if that failure amounts to deliberate indifference to the rights of citizens. In this case, viewing the allegations in the Complaint in the light most favorable to Plaintiff, and taking the allegations in the Complaint as a whole, Plaintiff appears to allege that Sheriff Hedrick inadequately trained his deputies and sanctioned unconstitutional conduct with deliberate indifference to the rights of citizens, particularly with regard to the use of tasers and the use of strip searches. Plaintiff also alleges that Sheriff Hedrick was aware of the constitutional

-25-

violations and refused to prevent them. It will be Plaintiff's burden to establish that this was actually the case, but, at this stage in the litigation, the Court concludes that Plaintiff has sufficiently alleged official capacity claims against Sheriff Hedrick, and those claims will not be dismissed.

5.     State Law Claims

The Sheriff's Office Defendants also contend that Plaintiff's state law claims should be dismissed. Specifically, Defendants contend that Plaintiff has failed to allege "extreme and outrageous conduct" to support a claim for intentional infliction of emotional distress given the facts and circumstances in this case, and that Defendants are entitled to public official immunity under North Carolina law. However, as previously noted, Defendants' contentions regarding the relevant facts and circumstances will not be considered on a motion to dismiss pursuant to Rule 12(b)(6). As discussed above in relation to the 14th Amendment claims, Plaintiff has alleged sufficient facts to allow her claims to go forward at this stage in the litigation, and Defendants' contentions regarding the lack of factual basis for those claims can be considered at trial or on a motion for summary judgment.

With respect to public official immunity under state law, public officials are not entitled to immunity for "[a]ctions that are malicious, corrupt or outside of the scope of official duties." Moore v. Evans, 124 N.C. App. 35, 42, 476 S.E.2d 415, 421 (1996). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." Thomas v. Sellers,

-26-

142 N.C. App. 310, 313, 542 S.E.2d 283, 286 (2001) (quoting Grad v. Kaasa, 312 N.C. 310, 313,

321 S.E.2d 888, 890 (1984)). "An act is wanton when it is done of wicked purpose, or when it is

done needlessly, manifesting a reckless indifference to the rights of others." Marlowe v. Piner,

119 N.C. App. 125, 128, 458 S.E.2d 220, 223 (1995). In this case, Plaintiff brings certain claims

that she styles as "negligence" claims, but Plaintiff alleges that the Sheriff's office defendants

burned her, kicked her, and strip searched her in a lewd manner without justification, that these

actions were done with fraud, malice, and wilful and wanton conduct, and that the individual

Defendants "each participated in the aforesaid conditions of fraud and/or malice and/or willful

conduct and /or wanton conduct." (Compl. at 201.) At this stage in the case, taking the

allegations in the Complaint as true, the Court cannot find that Defendants are entitled to public

official immunity as a matter of law. In addition, the Court finds that further development of

the record is required regarding the scope of public official immunity in this case and the

potential liability of the Sheriff for the alleged acts of his Detention Officers in this case under

state law. Therefore, Defendants' Motion to Dismiss as to the state law claims will be denied,

without prejudice to Defendant reasserting its immunity claims after an appropriate period for

discovery in this case.

      6.    Punitive Damages

      Finally, with respect to the claims for punitive damages, the Sheriff's Office Defendants

contend that Plaintiff's claims for punitive damages should be dismissed because punitive damages

are not available from an official capacity or municipal defendant, such as the Sheriff's Office.

Defendants also note that under state law, punitive damages may not be awarded against a municipality absent statutory authorization. Having reviewed these contentions, the Court finds that Plaintiff may not recover punitive damages on her "official capacity" claims, because those claims are analogous to a claim against a municipality or other local government unit, for which punitive damages are not available. See Newport v. Fact Concerts, Inc., 453 U.S. 247, 266-71, 101 S. Ct. 2748, 2759-62, 69 L. Ed. 2d 616 (1981) ("[A] municipality is immune from punitive damages under 42 U.S.C. § 1983"). Therefore, the Court will grant the Sheriff's Office Defendants' Motion to Dismiss the punitive damages claims as to the official capacity claims.

However, there is no such bar as to the punitive damages claims against the individual defendants sued in their individual capacities. See Smith v. Wade, 461 U.S. 30, 35, 56, 103 S. Ct. 1625, 1629, 1640, 75 L. Ed. 2d 632 (1983) ("[I]ndividual public officers [are] liable for punitive damages for their misconduct on the same basis as other individual defendants" where "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."). Defendants contend that Plaintiff does not sufficiently allege an evil motive or reckless indifference to Plaintiff's federally protected rights. Defendants similarly contend that Plaintiff's claims for punitive damages under state law should be dismissed because Plaintiff failed to sufficiently allege the fraud, malice, or willful or wanton conduct required to support a punitive damages claim. Having reviewed these contentions, the Court concludes that at this stage in the litigation, Plaintiff has sufficiently alleged malice, willful conduct, and deliberate indifference to Plaintiff's

-28-

constitutional rights to support a claim for punitive damages against the individual defendants sued in their individual capacities. Therefore, the Court will deny the Sheriff's Office Defendants Motion to Dismiss the punitive damages claims as to the individual capacity claims.

V.    CONCLUSION

For the reasons discussed above, Defendant Taser International's Motion to Dismiss [Document #10] will be granted, and Plaintiff's claims against Taser International will be dismissed with prejudice. In addition, the Motion to Dismiss by the City Defendants [Document #5] will be granted, and all of the claims against Defendants City of Lexington, John L. Gray, Jimmy Barber, John Lollis, Tad Kepley, Michael Noyes, and R. Todd Kepley will be dismissed. Finally, the Motion to Dismiss [Document #12] by the Sheriff's Office Defendants will be granted in part and denied in part. Specifically, the Motion to Dismiss [Document #12] will be granted as to Defendants Davidson County and County Manager Hyatt, and all of the claims against Davidson County and County Manager Hyatt will be dismissed. In addition, the Motion to Dismiss [Document #12] will be granted with respect to Plaintiff's claims for punitive damages against the remaining Defendants in their "official capacity." However, the Motion to Dismiss [Document #12] will be denied with respect to the remaining claims and Defendants, and with respect to Plaintiff's claims for punitive damages against the remaining Defendants in their individual capacities.

-29-

An Order consistent with this Memorandum Opinion will be filed contemporaneously herewith.

This, the 10th day of May, 2006.

United States District Judge